UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| ROBERT BLAZER, <br><br> Plaintiff, <br><br> vs. <br><br> KEITH GALL, CORSON COUNTY SHERIFF, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; JOSH BOLL, WALWORTH COUNTY SHERIFF, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; DEPUTY ALAN D DALE, DEPUTY AT CORSON COUNTY SD, INDIVIDUALLY AND OFFICIAL CAPACITY; DEPUTY JUSTIN TVEDT, DEPUTY AT CORSON COUNTY SD, INDIVIDUALLY AND OFFICIAL CAPACITY; DEPUTY MIKE VARILEK, DEPUTY AT CORSON COUNTY SD, INDIVIDUALLY AND OFFICIAL CAPACITY; JAILER/GUARD KILEY FRANKLIN, JAILER/GUARD AT WALWORTH COUNTY JAIL, INDIVIDUALLY AND OFFICIAL CAPACITY; JAILER/GUARD KIMBERLY LONG KNIFE, JAILER/GUARD AT THE WALWORTH COUNTY JAIL, INDIVIDUALLY AND OFFICIAL CAPACITY; JUSTIN JUNGWIRTH, WALWORTH COUNTY JAIL SD, INDIVIDUALLY AND OFFICIAL CAPACITY; JAILER/GUARD MARRISSA MICKELSON, JAILER/GUARD AT WALWORTH COUNTY JAIL, INDIVIDUALLY AND OFFICIAL CAPACITY; JAILER/GUARD HEATHER KROONJE, JAILER/GUARD AT WALWORTH COUNTY JAIL, INDIVIDUALLY AND OFFICIAL CAPACITY; JAILER/GUARD PATTY DUNWOODY, JAILER/GUARD AT WALWORTH COUNTY JAIL, INDIVIDUALLY AND OFFICIAL CAPACITY; JAILER/GUARD JEREMY JOHNSON, JAILER/GUARD AT WALWORTH COUNTY SD JAIL, INDIVIDUALLY AND OFFICIAL CAPACITY; JAILER/GUARD LANCE SCHNAIBLE, JAILER/GUARD AT WALWORTH COUNTY JAIL SD, INDIVIDUALLY AND OFFICIAL CAPACITY; DEPUTY TRAVIS BENTZ, | 1:16-CV-01046-KES <br><br><br> ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SPOLIATION SANCTIONS |

| | |
|---|---|
| DEPUTY AT WALWORTH COUNTY JAIL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; RONNIE DUCHENEAUX, JAILER/GUARD AT WALWORTH COUNTY JAIL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; GLENN BISSETT, JAILER/GUARD AT THE WALWORTH COUNTY JAIL, IN HIS INDVIDUAL AND OFFICIAL CAPACITY; TAMMY RICHARDS, JAILER/GUARD AT THE WALWORTH COUNTY JAIL, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; CINDY STRONGHEART, GUARD/JAILER AT THE WALWORTH COUNTY JAIL SD, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; WALWORTH COUNTY, SOUTH DAKOTA; CORSON COUNTY, SOUTH DAKOTA, Defendants. | |

Plaintiff, Robert Blazer, filed a second amended complaint against defendants for civil rights violations under 42 U.S.C. § 1983, following Blazer's stay as a pre-trial detainee at the Walworth County Jail. Docket 57. Blazer now moves for spoliation sanctions under Federal Rule of Civil Procedure 37(e) and this court's inherent power. Docket 64. For the following reasons, the court grants in part and denies in part Blazer's motion for spoliation sanctions.

## FACTUAL BACKGROUND

Robert Blazer was a Corson County pre-trial detainee housed in the Walworth County Jail due to a lack of permanent jail facilities in Corson County. Docket 57 ¶ 3. Blazer was housed in the Walworth County Jail from October 15, 2015, until June 20, 2016. *Id.*

Blazer was seen by a medical professional on October 27, 2015, where he was prescribed several medications, including one for diabetes, that were

refilled in November 2015, December 2015, and January 2016. Docket 66-1 at 1-9. On February 17, 2016, Blazer visited Dr. Robert Marciano and was prescribed duloxetine (for depression), gabapentin (for pain), metformin (for diabetes), ranitidine (for epigastric discomfort), and lisinopril (for blood pressure). *Id.* at 13. While Dr. Marciano logged all five of the prescriptions on Blazer's chart, only the prescriptions for ranitidine and lisinopril were transmitted by the clinic to the pharmacy for pickup by Corson County deputies. Docket 69-1 at 1; Docket 72-6 at 1-2. Blazer went without the duloxetine, gabapentin, and metformin for the remainder of his detention at the Walworth County Jail. Docket 66-11 at 2.

Blazer alleges that he made several requests for the missing medications. Docket 57 ¶ 25. Defendants deny that Blazer made several requests for the medications. Docket 58 ¶ 25; Docket 59 ¶ 1. During Blazer's deposition, Blazer stated that despite several requests, written grievance forms were not provided until "one of the new guards had given me a form." Docket 66-3 at 6. On March 31, 2016, Blazer completed a Medical Request Form that stated, "No medical help at all. I need all my meds . . . ." Docket 66-4. While Walworth County's official policy is to keep such records, Blazer's medical file did not contain the Medical Request Form. Docket 66-10 at 2-3; Docket 66-12 ¶ 21. When Walworth County defendants were asked during discovery why the form was missing, they responded "It is unknown which deputy or jail personnel initially received the request or why the document was not maintained." Docket 66-12 ¶ 21. Instead, the form was retrieved from Corson County during discovery,

because a copy had been faxed to Corson County from Walworth County and was preserved on April 1, 2016, as part of the Corson County official records. Docket 72-6 ¶ 13.

On April 5, 2016, an "agitated" Blazer covered his cell camera and said that he "was being tortured by not giving him his diabetic medications" and that Blazer would have the ACLU and EPA "sue this place so my son can be rich." Docket 66-5 at 1. Blazer was initially given a suicide blanket and when he covered the camera again with a shoe, Blazer was placed in a restraint chair. *Id.* Blazer continued to threaten to sue after being placed in the restraint chair. *Id.* at 2.

Shortly thereafter, on April 15, 2016, Blazer's criminal defense attorney, Brad Schreiber, sent an email to Sheriff Boll, Walworth County State's Attorney James Hare, and Corson County State's Attorney Eric Bogue. Docket 66-6. Schreiber, noting Blazer's multiple complaints about missing medications and mistreatment, asked to obtain copies of all of the jail's medical records pertaining to Blazer in order to provide Blazer with some assurances. *Id.* Schreiber also requested that he be given copies of any audio or video recordings from the jail, or "[a]t the very least, I would request that they be preserved." *Id.* The extended email chain shows that, on April 18, 2016, Schreiber followed up and asked whether he would be receiving the requested records. Docket 72-1 at 1. Sheriff Boll copied the message to Jail Administrator Justin Jungwirth and responded that he "forwarded the information on to the jail" but that "staff does not have time to chase their tales [sic] around on this."

*Id.* Further, Sheriff Boll said that he would "check into it and find out and get you what you need." *Id.* Walworth County did not produce Sheriff Boll's reply email in response to Blazer's discovery request; instead, the emails were obtained from Schreiber. Docket 72 ¶ 2.

When Sheriff Boll was asked in his deposition whether he made any efforts to preserve video or audio recordings, Sheriff Boll answered, "nothing that I did." Docket 66-9 at 5. Further, during depositions Jail Administrator Justin Jungwirth was asked:

> Q: Did you ever take any action to preserve any video or audio recordings as requested by Mr. Schreiber?
> A: No.
> Q: And was that ever asked of you?
> A: Not that I remember.
> Q: Had you been asked to take actions to preserve video and audio recordings, would you have done so?
> A: Oh, sure.

Docket 66-10 at 4.

At the time, surveillance recordings from the jail were kept for thirty days before being overwritten. Docket 70-2 ¶ 2. Areas such as the medication pass room and hallway outside of the medication pass room record video but not audio. *Id.* ¶ 4. Surveillance in the cells records both audio and visual. Docket 66-8 at 2. Ultimately, no surveillance records were preserved. Docket 66-7 at 2.

Among other allegations, Blazer claims that while in his cell on April 20, 2016, Marissa Mickelson indicated Blazer was not receiving his medications because Blazer had not taken a plea deal. Docket 66-3 at 10; Docket 74 at 2. Blazer also alleges that Kylie Franklin told him he was not receiving his diabetes medication because he no longer had diabetes. Docket 66-3 at 12.

5

Blazer further states that Sheriff Boll informed Blazer, in Blazer's cell, that Blazer was not receiving the medications because Corson County would not pay for Blazer's medication. Docket 74 at 2. Walworth County denies Blazer's allegations. Docket 59 ¶ 1.

Blazer filed suit pro se under 42 U.S.C. § 1983 on October 13, 2016. Docket 1 at 1. Appointed counsel filed a second amended complaint and brings the current motion for spoliation sanctions against Walworth County and Sheriff Boll. Docket 57; Docket 64.

## DISCUSSION

Blazer moves to impose sanctions against Walworth County and Sheriff Boll for spoliation of evidence. Docket 64. Specifically, Blazer requests default judgment on the issue of liability against Walworth County and Sheriff Boll, or, in the alternative, Blazer requests that this court issue an adverse jury instruction that the destroyed video recordings were unfavorable to the Walworth County defendants. Docket 65 at 13. Additionally, Blazer requests $177,778 for the video recordings that were destroyed following the preservation request, attorneys' fees and costs for the preparation of the spoliation motion, and any further relief that this court deems equitable and just. Docket 71 at 14. Defendants oppose the motion. Docket 70.

Spoliation is "the intentional destruction, mutilation, alteration, or concealment of evidence, usu. a document." *Spoliation*, *Black's Law Dictionary* (11th ed. 2019). The court's power to impose spoliation sanctions stems from either the Federal Rules of Civil Procedure, or when the Rules are inapplicable,

6

the court's inherent authority under common law. *E*Trade Sec. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 586 (D. Minn. 2005). Here, Rule 37(e) applies and thus "forecloses reliance on inherent authority." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Rule 37(e), amended in 2015, states that:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>   (A) presume that the lost information was unfavorable to the party;
>   (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>   (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

From the text of Rule 37(e), prior to imposing sanctions for spoliation of electronically stored information (ESI), the court must find that 1) ESI was lost; 2) the ESI "should have been preserved in the anticipation or conduct of litigation"; 3) a party "failed to take reasonable steps to preserve" the ESI; and 4) the ESI "cannot be restored or replaced through additional discovery." *Id.*

**I.     Loss of ESI**

Both parties acknowledge that electronic audio and video recordings stored on Walworth County Jail's hard drives were overwritten.

7

## II. Duty to Preserve

Rule 37(e) is based upon the common-law duty to preserve and does not attempt to create a new duty. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. "The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation." *E*Trade*, 230 F.R.D. at 588 (citing *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004)). Defendants were provided with multiple warnings indicating future litigation. Blazer filed an official Medical Request Form that noted concerns about the amount of time Blazer had been without the missing medications. Later, during the well-documented incident when Blazer was placed in the restraint chair, Blazer openly threatened suit regarding his missing diabetes medication.

The clearest signal of impending litigation came when Blazer's criminal defense attorney, Brad Schreiber, emailed an explicit request to Sheriff Boll for the production or preservation of any recordings of Blazer due to concerns arising from interviews with Blazer. Schreiber received a response from Sheriff Boll acknowledging receipt of the preservation request. While defendants posit that Schreiber's email was not worded harshly enough to trigger a duty to preserve, the email's courteous phrasing does not nullify its effectiveness as an indicator of impending litigation. At the latest, Walworth County and Sheriff Boll's duty to preserve arose following Schreiber's email on April 15, 2016. *See O'Berry v. Turner*, 2016 WL 1700403, at *3 (M.D. Ga. Apr. 27, 2016) (holding that receipt of a spoliation letter triggered a duty to preserve).

## III. Reasonable Steps

Rule 37(e) applies only when ESI is lost because a party failed to take reasonable steps to preserve ESI relevant to future or current litigation. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The preservation need not be perfect as the scope of information required to be preserved can, at times, be uncertain. *Id.* To determine what constitutes reasonable steps, the court considers factors such as a party's sophistication, resources, control over the ESI, and the existence of document retention systems and schedules. *Id.* While routine and good-faith operation of an electronic retention system is a relevant factor for determining whether a party took reasonable steps to preserve information, "the prospect of litigation may call for reasonable steps to preserve information by intervening in that routine operation." *Id.*; *see Lewy v. Remington Arms Co., Inc.*, 836 F.2d 1104, 1112 (8th Cir. 1988) ("[A] corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy.").

Here, despite Schreiber's follow-up email, it is notable that no steps were taken to preserve the recordings. When asked whether he could tell of any efforts he made to preserve the recordings, Sheriff Boll responded, "Nothing that I did." Jail Administrator Jungwirth was unable to remember if he was ever asked to preserve the video or audio recordings but noted in his deposition that he never took any action to preserve the recordings. When asked whether he would have taken actions to preserve the recordings had he been asked to, Jungwirth responded "Oh sure." Because no action was taken, the surveillance

9

records were overwritten per Walworth County's 30-day surveillance retention policy.

Walworth County and Sheriff Boll, neither being unsophisticated parties, had apparent sole control over the surveillance records. The resources required to preserve the recordings, as asked, would have been minimal and well within Walworth County and Sheriff Boll's abilities. Having taken no steps toward preservation, this court finds that Walworth County and Sheriff Boll did not take reasonable steps to preserve the recordings once the duty to preserve attached.

**IV.     Restoration Through Further Discovery**

Even if ESI is initially lost, when ESI is restored or replaced through additional discovery "no further measures should be taken." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Rule 37(e) does not limit a court's power to authorize additional discovery under Rules 16 and 26. *Id.* But additional efforts at replacement through discovery "should be proportional to the apparent importance of the lost information . . . ." *Id.* While copies of evidence such as Sheriff Boll's email replies and Blazer's Medical Request Form were produced from alternate sources during discovery, no known backups or alternatives exist to replace the surveillance recordings from the Walworth County Jail. Thus, this court finds that spoliation has occurred and turns to evaluate what, if any, sanctions are appropriate.

## V. Sanctions

The court "may exercise its discretion to choose the most appropriate sanction under the circumstances." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir. 1999). There are two paths leading toward the imposition of sanctions through Rule 37. Rule 37(e)(1) requires a finding of prejudice to a party from the loss of the ESI and allows for the imposition of sanctions only as necessary to cure the prejudice. Fed. R. Civ. P. 37(e)(1). Rule 37(e)(2) requires a showing of intent to deprive another party of the evidence before allowing the imposition of a default judgment or adverse instructions. Fed. R. Civ. P. 37(e)(2).

Rule 37(e)(1) leaves the judge discretion on how best to assess prejudice. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." *Id.* Absent the recordings, this court is faced with a "he said, she said" situation regarding the key issues of whether Blazer repeatedly requested the missing medications and whether Blazer was given certain reasons for the absence of the medications. Here, the loss of the ESI prejudices Blazer and sanctions necessary to cure the prejudice are applicable under Rule 37(e)(1).

With regard to sanctions under Rule 37(e)(2), " 'Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors.' " *Greyhound Lines, Inc.*

11

*v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (quoting *Morris v. Union Pac. R.R.*, 373 F.3d 896, 902 (8th Cir. 2004)). No showing of prejudice is required under Rule 37(e)(2), because prejudice is inferred through the court's finding of intent. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Sanctions through Rule 37(e)(2) should not be used when lesser measures through Rule 37(e)(1) would redress the loss of the ESI. *Id.*

In evaluating intent, this court notes the clear lack of any action taken by Walworth County and Sheriff Boll following well-defined requests by an attorney for preservation of recordings and documents relevant to likely litigation. Further consideration is given to the loss of the Medical Request Form that should otherwise have been preserved per policy and survived only through safekeeping by Corson County, as well as relevant emails not turned over during the course of discovery. Based on the totality of these circumstances, this court finds that Walworth County and Sheriff Boll demonstrated the intent to deprive Blazer of evidence for use in litigation and that the measures allowed through Rule 37(e)(1) do not sufficiently redress the loss.

Blazer requests a default judgment, or, in the alternative, an adverse inference instruction in addition to attorneys' fees and other fines. When determining proper sanctions, the remedy should match the wrong. Fed. R. Civ. P. 37(e)(1). This court finds that the request for default judgment on the issue of liability as well as the request for $177,778 go too far. Instead, this court will instruct the jury that it may presume the content of the overwritten

recordings was adverse to Walworth County and Sheriff Boll, but will allow for reasonable rebuttal. *See Stevenson*, 354 F.3d at 750 (noting that "[a] permissive inference is subject to reasonable rebuttal."). Further, this court awards reasonable attorneys' fees to Blazer under Rule 37(e)(1) and (e)(2).

## CONCLUSION

For the reasons stated above, this court concludes that Walworth County and Sheriff Boll spoliated evidence with the intent to deprive Blazer of the evidence's use in litigation, and that the loss of the evidence was prejudicial. As a result, Blazer is entitled to sanctions under Rule 37(e)(1) and (e)(2). It is

ORDERED that Blazer's motion for spoliation sanctions (Docket 64) is granted in part and denied in part as follows:

1. A jury instruction will be given permitting the jury to presume the content of the overwritten recordings was adverse to Walworth County and Sheriff Boll, but reasonable rebuttal will be allowed.
2. Reasonable attorneys' fees are to be paid to Blazer. Blazer should provide the court with his request for attorneys' fees and a detailed accounting by August 21, 2019.

Dated August 1, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE