UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| ROBERT BLAZER,<br><br>Plaintiff,<br><br>vs.<br><br>KEITH GALL, CORSON COUNTY SHERIFF, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; JOSH BOLL, WALWORTH COUNTY SHERIFF, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; DEPUTY ALAN D DALE, DEPUTY AT CORSON COUNTY SD, INDIVIDUALLY AND OFFICIAL CAPACITY; DEPUTY JUSTIN TVEDT, DEPUTY AT CORSON COUNTY SD, INDIVIDUALLY AND OFFICIAL CAPACITY; DEPUTY MIKE VARILEK, DEPUTY AT CORSON COUNTY SD, INDIVIDUALLY AND OFFICIAL CAPACITY; JAILER/GUARD KILEY FRANKLIN, JAILER/GUARD AT WALWORTH COUNTY JAIL, INDIVIDUALLY AND OFFICIAL CAPACITY; JAILER/GUARD KIMBERLY LONGBRAKE, JAILER/GUARD AT THE WALWORTH COUNTY JAIL, INDIVIDUALLY AND OFFICIAL CAPACITY; JUSTIN JUNGWIRTH, WALWORTH COUNTY JAIL SD, INDIVIDUALLY AND OFFICIAL CAPACITY; JAILER/GUARD MARRISSA MICKELSON, JAILER/GUARD AT WALWORTH COUNTY JAIL, INDIVIDUALLY AND OFFICIAL CAPACITY; JAILER/GUARD HEATHER KROONJE, JAILER/GUARD AT WALWORTH COUNTY JAIL, INDIVIDUALLY AND OFFICIAL | 1:16-CV-01046-KES<br><br><br>ORDER GRANTING AND DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |

CAPACITY; JAILER/GUARD PATTY
DUNWOODY, JAILER/GUARD AT
WALWORTH COUNTY JAIL,
INDIVIDUALLY AND OFFICIAL
CAPACITY; JAILER/GUARD JEREMY
JOHNSON, JAILER/GUARD AT
WALWORTH COUNTY SD JAIL,
INDIVIDUALLY AND OFFICIAL
CAPACITY; JAILER/GUARD LANCE
SCHNAIBLE, JAILER/GUARD AT
WALWORTH COUNTY JAIL SD,
INDIVIDUALLY AND OFFICIAL
CAPACITY; DEPUTY TRAVIS BENTZ,
DEPUTY AT WALWORTH COUNTY
JAIL, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY; RONNIE
DUCHENEAUX, JAILER/GUARD AT
WALWORTH COUNTY JAIL, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY;
GLENN BISSETT, JAILER/GUARD AT
THE WALWORTH COUNTY JAIL, IN HIS
INDVIDUAL AND OFFICIAL CAPACITY;
TAMMY RICHARDS, JAILER/GUARD
AT THE WALWORTH COUNTY JAIL, IN
HER INDIVIDUAL AND OFFICIAL
CAPACITY; CINDY STRONGHEART,
GUARD/JAILER AT THE WALWORTH
COUNTY JAIL SD, IN HER INDIVIDUAL
AND OFFICIAL CAPACITY; WALWORTH
COUNTY, SOUTH DAKOTA; CORSON
COUNTY, SOUTH DAKOTA,

Defendants.

Plaintiff, Robert Blazer, a former pretrial detainee at the Walworth

County Jail, filed suit against Keith Gall, the Corson County Sheriff; Josh Boll,

the Walworth County Sheriff; Alan D. Dale, Justin Tvedt, and Mike Varilek,

Corson County deputies; Kylee Franklin, Kimberly Longbrake, Justin

Jungwirth, Marissa Mickelson, Heather Kroonje, Patty Dunwoody, Jeremy

Johnson, Lance Schnaible, Travis Bentz, Ronnie Ducheneaux, Glenn Bissett, Tammy Richards, and Cindy Strongheart, correctional officers and employees at the Walworth County Jail; and Corson and Walworth Counties.[1] *See* Dockets 1, 8, 57. He sued all individual defendants in both their individual and official capacities. Dockets 1, 8, 57. Blazer alleged a civil rights violation under 28 U.S.C. § 1983 against all defendants. Dockets 1, 8, 57. Walworth County defendants (Bentz, Bissett, Boll, Ducheneaux, Dunwoody, Franklin, Johnson, Jungwirth, Kroonje, Longbrake, Mickelson, Richards, Strongheart, and Walworth County) and Corson County defendants (Dale, Gall, Tvedt, Varilek, and Corson County) each moved separately for summary judgment. Dockets 75, 79. For the following reasons, the court denies Walworth County defendants' summary judgment motion, denies Corson County defendants' summary judgment motions as to Corson County and the defendants in their official capacities, and grants Corson County defendants' summary judgment motion as to the defendants in their individual capacities.

## FACTUAL BACKGROUND

The facts, viewed in the light most favorable to the non-moving party, are as follows:

Blazer was arrested on Corson County charges on October 14, 2015. Docket 86 ¶ 4. Dale transported Blazer to the Walworth County Jail on October

---

[1] Blazer originally sued Corson County State's Attorney Eric Bogue along with the above defendants, but his Second Amended Complaint terminated the suit against Bogue. Docket 57.

15, 2015, where he was held as a pretrial detainee until June 20, 2016. *Id.*

¶¶ 5-6. Corson County does not operate its own jail. *See* Docket 82-10, at 8-11.

Instead, it contracts with Walworth County to house pretrial detainees in the

Walworth County Jail. *Id.* The contract between the two counties states, in

part:

> . . . Walworth County understands and agrees that it will provide
> medical and dental care for prisoners and detainees of [Corson
> County], provided, however, [Corson County] agrees to pay directly
> Walworth County for the entire expense of all medical or dental
> facilities, hospital expenses, drug expenses, physician fees, and
> any other necessary and proper expenses arising out of required
> medical or dental care. [Corson County] further understands and
> agrees that the determination as to whether or not medical and
> dental care is necessary is left to the sale [sic] discretion of the
> Walworth County Sheriff's Office.

*Id.* at 9. Under this agreement, Walworth County is responsible for providing

Corson County pretrial detainees with medical and dental care and

determining what care is necessary, and Corson County is responsible for

reimbursing Walworth County for the care it provides.[2] *Id.*

In practice, during the time Blazer was detained at the Walworth County

Jail, Corson County was responsible for ordering medications and arranging

medical treatment for Corson County detainees held at the Walworth County

Jail. *See* Docket 89-4 at 3; Docket 89-11 at 2. If a Corson County detainee had

to see the doctor, "it would be on [Corson] [C]ounty to come get [him] to take

---

[2] Corson County argues that Blazer's assertion that Corson County was not
paying for his medical care is based on hearsay, which may not be considered
at summary judgment. Docket 99 at 2. The court does not consider the
portions of the affidavit that are based on hearsay.

[him] to the doctor and be seen to get [his] medications refilled . . . .” Docket 89-4 at 3. Walworth County did not directly obtain medical care for Corson County detainees; rather, if a Corson County detainee like Blazer needed care, the Walworth County staff would “advise Corson County and they would handle it from there.” Docket 89-11 at 2.

Walworth County Jail employees provide differing accounts of how the Walworth County Jail handled detainee complaints. Ducheneaux stated that he would verbally convey to Franklin that a Corson County detainee made medical complaints and requested additional medication. *See* Docket 89-6 at 7. Boll testified that when a detainee made a nonurgent medical request, the detainee filled out a medical form that was forwarded to the county where he or she was facing charges. Docket 89-7 at 4-6.

In a preliminary health screening on October 16, 2015 at the Walworth County Jail, Blazer reported that he suffered from diabetes, post-traumatic stress disorder, and shoulder and arthritic pain. Docket 78-3 at 1. He arrived at the jail with gabapentin, zolpidem tartrate, and alprazolam. *Id.* at 2. He reported that he needed to take metformin and gabapentin. *Id.*

Blazer was taken to see Dr. Regg Hagge on October 27, 2015. *See* Docket 78-4. At the appointment, Dr. Hagge confirmed that Blazer actively suffered from bipolar disorder, a collar bone fracture, degenerative arthritis, depression, diabetes, PTSD, and tobacco dependence. *Id.* at 2. He prescribed a number of medications that were then transferred to Family Pharmacy in Mobridge, South Dakota, to be filled. *See* Docket 82-10 at 15. According to Family Pharmacy’s

records, Dr. Hagge prescribed, among other medications, gabapentin, oxycodone, duloxetine, and metformin. *Id.* Walworth County Jail staff began administering metformin, gabapentin, oxycodone, alprazolam, and duloxetine to Blazer, and recorded the administrations of the medication in his medication administration record (MAR). Docket 72-4 at 24.

Blazer's next doctor visit was with Dr. Robert Marciano on December 31, 2015. *See* Docket 78-5. During that visit, Dr. Marciano tested Blazer's hemoglobin A1C level, a measure that estimates a diabetic patient's average blood sugar over the preceding 90-day period. Docket 78-6 at 3; Docket 85 ¶ 10. Blazer's A1C level was 6.5%. Docket 78-6 at 3; Docket 78-10 at 4. Dr. Marciano continued the prescriptions for metformin, gabapentin, duloxetine, and alprazolam, and those prescriptions were transmitted to Family Pharmacy to be filled. Docket 82-10 at 15. The Walworth County Jail staff continued administering the medications to Blazer. Docket 72-4 at 3.

Blazer was taken to the doctor for the third and final time during his detention at the Walworth County Jail on February 17, 2016. *See* Docket 78-6. Varilek, a Corson County Deputy Sherriff, accompanied Blazer to that appointment. Docket 86 ¶ 20. Varilek was present in the examination room for the visit. *Id.* ¶ 21; Docket 82-5 at 2.

During the February 17, 2016 appointment, Dr. Marciano prescribed metformin to Blazer for his diabetes, gabapentin for his chronic pain issues, and duloxetine for his PTSD, along with lisinopril for hypertension and Zantac

for epigastric discomfort. Docket 78-6 at 4. Family Pharmacy only received orders to fill the Zantac and lisinopril prescriptions. Docket 86 ¶¶ 31, 32. Family Pharmacy did not receive any other prescriptions for Blazer on or around February 17, 2016, including the prescriptions for duloxetine, metformin, or gabapentin. *Id.* ¶ 34.

According to Varilek, Dr. Marciano stated that the medications prescribed during the visit were transmitted to the pharmacy to be filled. Docket 89-17 at 4. Varilek did not pick up Blazer's prescriptions after the visit. Docket 86 ¶ 23. Rather, he returned Blazer to the Walworth County Jail. *Id.* According to Blazer, Varilek informed Blazer that he was returning that evening to pick up the prescriptions. *Id.* Varilek asserts that he informed Jungwirth about the prescriptions and Jungwirth was to make sure they were picked up. *Id.*

After the February 17, 2016 visit, Blazer began complaining that he was not receiving all his medications. Docket 85 ¶ 14. Blazer asserts that he asked Varilek after his February 17, 2016 appointment if they were going to pick up his medications, and Varilek stated he was going to pick up the medications later in the night. Docket 89-2 at 2. Blazer states that he asked Dale "quite a few" times when Dale transported him to court appearances when Blazer would be receiving his remaining medications. *Id.* at 6. He also alleges he was denied medical slips numerous times but wanted to fill them out to alert jail officials to his complaints. *Id.* at 7.

One medical request slip filled out by Blazer at the Walworth County Jail was produced by Corson County. *See* Docket 66-4. The form stated that Blazer needed "all [his] meds," alleging that he was diabetic and did not have his diabetes medications. *Id.* This form was faxed to Corson County and received on April 1, 2016. *See id.* The medical request slip that Blazer filled out at the Walworth County Jail was not produced by Walworth County during discovery or included in summary judgment evidence by Walworth County. Docket 65 at 4; *see* Docket 78.

On April 5, 2016, after three months of not receiving his medications, Blazer alleges that he acted out to draw attention to the medical problems he was facing. Docket 66-5. He covered the camera in his cell and "be[came] agitated saying he was being tortured" by the defendants, who were not giving him his diabetes medications. *Id.* On April 15, 2016, the lawyer representing Blazer in his criminal case emailed Boll and the Corson County and Walworth County State's Attorneys to inform them that Blazer was still "not receiving some of his prescribed medications which include PTSD meds, diabetic injections and certain pain meds." Docket 66-6.

After Blazer stopped being provided metformin, gabapentin, and duloxetine, he alleges that he experienced: flu-like symptoms; nausea; dizziness; insomnia; fatigue; increases in his anxiety, depression, PTSD symptoms, pain, and thirst; headaches; cold sweats; wrenching stomach; and frequent urination. Docket 88 ¶ 4. Blazer provided evidence that these symptoms are a risk when patients abruptly cease the use of metformin,

gabapentin, and duloxetine. Docket 78-15 at 4-5. Blazer alleges that he reported these symptoms to the defendants on numerous occasions.[3] Docket 88 ¶ 5. Blazer claims that almost daily he asked the defendants to either provide him his missing medications for diabetes, pain, and his psychiatric problems, or to take him back to the doctor. *Id* ¶ 6.

Blazer was not taken back to the doctor after his verbal and written complaints in April of 2016. *Id.* ¶ 7; Docket 66-6. Individual Walworth County defendants' recollection of Blazer's complaints differ at times from Blazer's account, but all agree that Blazer's complaints about not receiving all his medications were never addressed. Blazer alleges that on April 20, 2016, in response to a request for his medications, Mickelson told Blazer that if he had taken the plea deal that was "on the table" he would have been given his medications. Docket 66-3 at 10. Mickelson claims she does not recall if Blazer ever complained about not receiving his medication. Docket 89-11 at 5. She does not recall ever looking into the issues surrounding Blazer's claims that he

---

[3] On August 1, 2019, the court granted in part Blazer's motion for spoliation sanctions (Docket 64). *See* Docket 91. The court found that Walworth County and Sheriff Boll spoliated evidence with the intent to deprive Blazer of the evidence's use in litigation. *Id.* at 13. The court granted sanctions under Rule 37(e)(1) and e(2), and ordered that at trial a jury instruction would be given permitting the jury to presume the content of the overwritten recordings was adverse to Walworth County and Sheriff Boll. *Id.* Thus, for purposes of these summary judgment motions, the court presumes that the destroyed recordings would support Blazer's assertions that he informed the Walworth County defendants numerous times that he was not receiving his medications, that he suffered adverse symptoms as a result of him not receiving medications, and that he told the Walworth County defendants that he was suffering those symptoms. *See* Docket 87 at 3, n.1.

did not receive his medications, despite authoring an email stating he was taken off all medications except lisinopril and ranitidine. *Id.* at 7-8; Docket 82-10 at 7. She states that she may have called someone about his medications, or she may have looked at his MAR to determine what medications were being administered to him. Docket 78-13 at 5.

Blazer alleges that Franklin told him he no longer had diabetes. Docket 66-3 at 12. But Franklin implies Blazer did not complain about any medical issues after April 17, 2016, because he would have been taken to the doctor every time he complained and he was not taken to the doctor after that date. Docket 89-12 at 2-3. According to an April 19, 2016 email from Tvedt to Eric Bogue, the Corson County State's Attorney, Franklin told Tvedt that Blazer "was taken off medications" because his glucose levels have been fine. Docket 82-10 at 12.

Longbrake recalls that "quite often" Blazer orally made medical requests related to his diabetes, but she does not recall specifically what, if anything, she did to address the complaints. Docket 89-3 at 3-5. Bisset and Strongheart do not recall assisting Blazer in getting medical care other than providing a medical request form to him, or that Blazer complained about not receiving his medications. Docket 89-4 at 4-9; Docket 89-5 at 3-4. Ducheneaux recalls that Blazer complained about not receiving medications but stated that he did not perform any follow-up or attempt to make sure he received the medications, other than providing Blazer with medical request forms. Docket 89-6 at 3-7. Boll does not recall Blazer making any complaints about not receiving

medications. Docket 89-7 at 10. Jungwirth similarly does not recall Blazer making any complaints. Docket 89-8 at 3. Dunwoody stated that when Blazer made complaints about not receiving his medications, she would have relayed the complaints to someone at Corson County, possibly Tvedt or Varilek. Docket 89-13 at 2-4. Schnaible testified that he provided Blazer six medical forms to fill out, which were forwarded to Franklin. Docket 89-14 at 2-3.

Factual disputes also exist as to Corson County's handling of Blazer's complaints. Gall recalls that he received a fax from the Walworth County Jail indicating that Blazer was complaining about not receiving the care he needed and having a sore on his toe. Docket 89-15 at 3-5. Gall followed up with Walworth County about the sore on Blazer's toe but did nothing about Blazer's complaint that he wasn't receiving all of his medications. *Id.* at 5-6. Dale did not recall ever being aware that Blazer was complaining about not receiving his medications or doing anything in response. Docket 89-16 at 2-3. Varilek stated he did not know which prescriptions were or were not refilled. Docket 89-17 at 3-4. After Blazer's criminal attorney contacted the Corson County State's Attorney, Tvedt sent an email indicating that Franklin informed him that Blazer was taken off his medications. Docket 82-10 at 12. Corson County defendants did not attempt to contact Dr. Marciano or the Family Pharmacy where Blazer's prescriptions were sent to verify whether an error may have occurred in transmitting the medicines. *See* Docket 86 ¶¶ 35-47. Corson County defendants did not take Blazer back to see a doctor after the April complaints. *See id.*

11

Russ Hatch, a pharmacist at Family Pharmacy—where Blazer's prescriptions were typically sent—stated that he never received any calls asking about Blazer's medications. Docket 89-19 at 2. He confirmed that had the jail asked for a refill request for Blazer's missing medications he would have sent that request to Blazer's doctor for refill. *Id.* at 3-4. Dr. Marciano, who prescribed the medications on February 17, 2016, confirmed that had Blazer or the Walworth County Jail called the clinic to ask if Blazer should have been receiving additional medications, he would have "certainly" looked into his records to determine if more medications should have been transmitted to the pharmacy. Docket 89-1 at 7-9.

Blazer claims that he continues to suffer psychological and emotional injuries because he was denied medical care in the Walworth County Jail. Docket 88 ¶ 8. He has nightmares, panic attacks, and is paranoid, and he believes the defendants were trying to kill him. *Id.* When Blazer was transferred to the South Dakota Department of Corrections, his A1C levels were tested again on July 30, 2016. Docket 78-11 at 2. His A1C level was 7.4, 0.9 higher than what it had been on December 31, 2015, and higher than the goal level for a patient his age. *Id.*; Docket 78-10 at 4.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact.").

Once the moving party meets its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts and inferences drawn from those facts are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

### I. Deliberate Indifference of Individual Defendants in Their Individual Capacities

Blazer claims that the defendants failed to provide him medical care, a civil rights violation under 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of [law], subjects, or causes to be subjected,

any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. The Eighth Amendment protects post-conviction prisoners from "wanton infliction of unnecessary pain." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The Fourteenth Amendment provides pretrial detainees protection that is "at least as great" as that afforded to post-conviction prisoners. *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (emphasis removed) (internal quotations omitted).

Pretrial detainees are protected from deliberate indifference to their medical needs. *See Coleman v. Rahija*, 114 F.3d 778, 785 (8th Cir. 1997). Deliberate indifference includes intentional denial or delay of access to medical care or intentional interference with treatment once prescribed. *Estelle*, 429 U.S. at 104-05. To establish a deliberate indifference claim, a prisoner must show (1) that he suffered objectively serious medical needs and (2) that the defendants knew of and disregarded those needs. *Coleman*, 114 F.3d at 784.

Here, Blazer claims that he was denied three of his prescriptions for over four months—between his February 17, 2016 doctor's appointment and his transfer to the South Dakota Department of Corrections on June 20, 2016. Docket 87 at 2. Blazer claims that the defendants failed to secure Blazer's prescriptions, despite his complaints to them and asking for their help. *Id.*

Blazer claims that these actions amount to deliberate indifference to his serious medical needs.[4] *Id.* at 12-14.

## A. Whether Blazer Suffered Objectively Serious Medical Needs

"A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " *Coleman,* 114 F.3d at 784 (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). Here, Blazer placed medical evidence in the record showing that a physician diagnosed him as requiring metformin, gabapentin, and duloxetine to treat his diabetes, pain, and psychological issues. Docket 76 ¶ 6; Docket 86 ¶ 9. Dr. Marciano prescribed diabetes and pain medications during Blazer's February 17, 2016 appointment and Dr. Hagge had prescribed them earlier on October 27, 2015. Docket 85 ¶¶ 3-7; Docket 86 ¶¶ 9, 19. Blazer presented evidence that a physician diagnosed him as requiring treatment in the form of multiple medications. Thus, he successfully showed that he suffered a serious medical need.

Walworth County defendants and Corson County defendants argue that Blazer failed to place verifying medical evidence in the record, and as a result he has not shown that he suffered a serious medical need. Docket 77 at 15;

_____

[4] Blazer claims that the defendants were deliberately indifferent by denying Blazer medical care. Docket 87 at 14. Walworth County defendants argue that they were not deliberately indifferent for intentionally interfering with treatment once prescribed. Docket 77 at 9. The court addresses Blazer's argument, that the alleged deliberate indifference occurred because the defendants denied or delayed Blazer's medical treatment.

Docket 99 at 10 (Corson County adopting Walworth Count Defendants'
argument). Defendants argue that evidence of the effect of a delay in treatment
is required to support a deliberate indifference claim, not just evidence of the
condition itself. Docket 77 at 15 (citing *Scott v. Coleman*, 439 F. App'x 783, 784
(11th Cir. 2011)). Defendants also suggest that a plaintiff must show evidence
of a worsening of the underlying condition, rather than merely adverse
symptoms, to move forward with a deliberate indifference claim. Docket 77 at
17 (" . . . *Oliver* and *Bailey* made clear that there must be a worsening in the
underlying condition, in contrast to symptoms experienced by the detainee.")
(citing *Bailey v. Feltmann*, 810 F.3d 589, 594 (8th Cir. 2016); *Oliver v. Cty. of
Gregory*, 2016 WL 958171, at *10-13 (D.S.D. March 8, 2016)).

Blazer can show a serious medical need by showing *either* verifying
medical evidence *or* that his condition would be obvious to a layperson. *See
Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999). *Roberson* is factually
similar to Blazer's case and supports a finding that Blazer raised sufficient
evidence to show that he suffered from a serious medical need. In *Roberson*,
the plaintiff was denied his diabetes medications but did not present verifying
medical evidence that the delay in treatment had caused him long-term harm.
*Id.* The court found that it was enough that the plaintiff alleged that he
"suffered from and complained about serious physical conditions resulting
from the failure to treat his diabetes." *Id.* Those complaints "would have been
obvious to a layman." *Id.* Thus, the plaintiff showed he suffered from a serious
medical need. *Id.*

Here, Blazer alleges that he reported his symptoms to the Walworth County and Corson County defendants on numerous occasions. Docket 88 ¶ 5. The court presumes that the video and audio recordings destroyed by Walworth County and Boll would show, as Blazer claims, that Blazer was presenting symptoms and complaining of them to staff. Docket 86 ¶ 58; *see also* Docket 87 at 3, n.1. And Corson County defendants were made aware of Blazer's symptoms by Varilek being present for his doctor's appointment, the fax to Gall stating that Blazer was complaining about not receiving his medications, the email from Blazer's criminal lawyer, and Blazer's complaints to Dale when Dale transported him. Docket 89-17 at 2; Docket 89-15 at 3; Docket 66-6; Docket 89-2 at 6. These complaints are similar to those of the plaintiff in *Roberson*. Thus, it would have been obvious to a layperson that Blazer was suffering from an objectively serious medical need and Blazer need not also present verifying medical evidence.

The Eighth Circuit has found that in some circumstances a failure to present verifying medical evidence of the detrimental effects of a delay in treatment is fatal to an inmate's § 1983 claim. *See Jackson v. Reibold*, 815 F.3d, 1114, 1119-20 (8th Cir. 2016). In *Jackson*, the plaintiff "provided no evidence showing that any delay in treatment had a detrimental effect," and merely showed that he was diagnosed with a condition that required treatment. *Id.* at 1120. Unlike the plaintiff in *Jackson*, Blazer showed that his medical need "had a detrimental effect" on his condition because he showed he was suffering symptoms as a result of the delay in treatment. *See* Docket 88 ¶ 5;

Docket 86 ¶ 58; *see also* Docket 87 at 3, n.1; Docket 89-17 at 2; Docket 89-15 at 3; Docket 66-6; Docket 89-2 at 6. Blazer also showed that when he was transferred to the South Dakota Department of Corrections following his time in the Walworth County Jail, his A1C levels were worse than before the alleged delay in medical care. Docket 78-11 at 2. His A1C level was 7.4, 0.9 higher than what it had been on December 31, 2015, and higher than the goal level for a patient his age, showing a worsening in his condition. *Id.*; Docket 78-10 at 4. Finally, after Blazer stopped being provided metformin, gabapentin, and duloxetine, he alleges that he experienced a number of symptoms, including nausea, dizziness, pain, and depression. Docket 88 ¶ 4. Blazer provided evidence from a medical doctor that these symptoms are a risk when patients abruptly cease the use of metformin, gabapentin, and duloxetine. Docket 78-15 at 4-5. Blazer asserts that because he was not taken to the doctor, a medical professional was not able to medically verify those symptoms while they were present. Docket 87 at 20. Thus, his claim does not fail because of a lack of verifying medical evidence.

Even if Blazer is required to present verifying medical evidence, a lack of evidence that his underlying condition worsened is not fatal to his claim. Neither *Oliver* nor *Bailey*, the two cases relied on by defendants, distinguish between the harm caused by worsening symptoms and the harm caused by worsening of a plaintiff's underlying disease. *See Bailey* 810 F.3d at 594 (plaintiff who cut his hand immediately before arrest did not show adverse effect of a delay of treatment when he did not complain to the arresting officer

18

or request treatment, had been seen by a paramedic before arrest, and received treatment immediately upon release from jail the next morning); *Oliver*, 2016 WL 958171, at *10-13 (plaintiff who suffered a broken ankle did not demonstrate the detrimental effect of a one-day delay in treatment by providing testimony from an expert that he went one day without pain medication, an ice pack, or proper medication, and the defendant showed that there was no "adverse medical effect on [plaintiff] or his ankle" because of the one-day delay). Both cases found that there was no verifying medical evidence of *any* adverse effect, and do not distinguish between an adverse symptom and a worsening underlying condition.

Blazer successfully raised a genuine issue of material fact as to whether he suffered from a serious medical need by raising evidence that he had been diagnosed with diseases and was prescribed medications for treatment and similar to *Roberson* by showing that he suffered symptoms and complained of those symptoms to defendants.

### B. Whether Defendants Knew of and Intentionally Disregarded Blazer's Objectively Serious Needs

A plaintiff must show that the defendants knew of and disregarded an excessive risk to an inmate to succeed on a claim of deliberate indifference. *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015). "[T]he evidence must show that the officers recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Id.* (emphasis in the original) (citing *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009)).

The plaintiff need not show that the defendants actually knew of the risk. *Id.* The court may "infer knowledge if the risk was obvious." *Id.*

Once knowledge is established, the plaintiff "then must demonstrate [that] the actor deliberately disregarded that risk." *Id.* "Deliberate indifference constitutes more than mere negligence." *Id.* The "plaintiff does not have to show that the prison officials acted 'for the very purpose of causing harm or with the knowledge that harm w[ould] result.' " *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "The obvious inadequacy of a response to a risk may support an inference that [the defendant] recognized the inappropriateness of [the] conduct." *Id.* (internal quotation omitted).

### 1. Walworth County Defendants

Blazer raised a genuine issue of material fact as to whether the Walworth County defendants knew of his serious medical needs. First, he stated that when he was booked on October 16, 2015, he made the Walworth County defendants aware that he had diabetes, PTSD, and shoulder and arthritic pain, and that he needed prescription medications to treat those conditions. Docket 78-3. And Blazer alleges that he regularly complained that he was not receiving all his prescription medications and that he was experiencing a multitude of medical problems as a result. Docket 86 ¶ 58. The court presumes that the video and audio recordings destroyed by Walworth County and Boll would show, as Blazer claims, that Blazer was presenting symptoms and complaining of them to staff. *Id.*

Blazer also alleges that on April 5, 2016, he acted out to draw attention to the medical problems he was facing. Docket 66-5. He covered the camera in his cell and "be[came] agitated saying he was being tortured" by the defendants, who were not giving him his diabetes medications. *Id.* Blazer filled out a medical request form around April 1, 2016 that stated he needed "all [his] meds," alleging that he was diabetic and did not have all his diabetes medications. Docket 66-4. Because Walworth County failed to produce the medical request form that it had faxed to Corson County, and because Schnaible stated that he provided Blazer six medical request forms, a jury could conclude that more forms were filled out than were produced by either county. Docket 91 at 13. This strengthens Blazer's assertion that the Walworth County defendants were aware of his medical needs. On April 15, 2016, Blazer's lawyer contacted the Walworth County state's attorney to inform him that Blazer was still "not receiving some of his prescribed medications which include PTSD meds, diabetic injections and certain pain meds." Docket 66-6. These facts show that Blazer vociferously advocated to get the medication he claimed he was missing, making it unlikely Walworth County defendants were unaware of his serious medical needs and raising a genuine question about whether the Walworth County defendants would have known of those needs.

Blazer alleged facts about each individual Walworth County defendant that give rise to genuine issues of material fact about whether each Walworth County defendant knew about his medical needs. Longbrake recalls that "quite often" Blazer orally made medical requests related to his diabetes. Docket 89-3

at 3-5. On April 15, 2016, Blazer's lawyer sent an email to Boll that stated Blazer was still "not receiving some of his prescribed medications which include PTSD meds, diabetic injections and certain pain meds." Docket 66-6. Ducheneaux recalls that Blazer requested additional medications at the jail. Docket 89-6 at 3. Strongheart states she does not recall Blazer ever complaining about not receiving his medication, but she stated that she "probably" would have provided him with medical request forms in which he might have asked to be taken to the doctor. Docket 89-5 at 3-4. Strongheart and Ducheneaux testified that they would convey to Franklin and Jungwirth when a Corson County detainee made medical complaints. Docket 89-5 at 5; Docket 89-6 at 7. This leads to an inference that Franklin and Jungwirth were also aware of Blazer's complaints. Blazer states that Franklin told him he no longer had diabetes, but Franklin claims she does not remember addressing Blazer's complaints. Docket 89-12 at 2; Docket 89-12 at 2-3. Blazer alleges that he asked Strongheart and Richards for medication and they ignored his request. Docket 66-3 at 18. Blazer states that on April 20, 2016, he requested his medications from Mickelson. *Id.* at 10. While Kroonje does not recall Blazer asking for his medications, Blazer alleges that she was asked about the missing medications. Docket 89-9 at 8-9; Docket 66-3 at 15-16. Dunwoody recalls Blazer complaining that he was not getting his medications. Docket 89-13 at 2. According to Blazer, he asked Johnson about his medications on at least one occasion. Docket 66-3 at 16. Schnaible recalls Blazer filling out six medical request forms. Docket 89-14 at 3. Blazer alleges that he asked Bentz

and Bissett why he wasn't being given his medications. Docket 66-3 at 17-18. Blazer created a genuine issue of material fact about whether each Walworth County defendant was aware of his objectively serious medical needs.

Blazer also raised a genuine issue of material fact as to whether the Walworth County defendants disregarded his serious medical needs. The Walworth County defendants state that they could not "chase their tales [sic] around" looking into Blazer's medical requests. Docket 72-1. But Walworth County individual defendants did not take Blazer back to the doctor when they were made aware on at least four occasions that he was not receiving his medication. *See* Docket 85. Nor did they call the pharmacy or Dr. Marciano to verify if all prescriptions were transmitted. *Id.* This shows an "obvious inadequacy of a response to a risk[.]" *Krout*, 583 F.3d at 567. Blazer showed that after repeated requests from Blazer and his attorney, Walworth County defendants' decision to not take Blazer back to the doctor, make a telephone call to the doctor, or take his requests for medical help seriously rose to the level of intentional indifference to a serious medical risk.

### 2.    Corson County Defendants

Blazer also raised a genuine issue of material fact as to whether each of the Corson County defendants knew of his serious medical needs. He alleged that Varilek was in the examination room when Dr. Marciano refilled Blazer's medications, and Varilek recalled that the appointment was to refill the medications Blazer took for his medical conditions. Docket 89-17 at 2-4. Gall recalls Blazer complaining that he was being refused medications. Docket 89-

23

15 at 3-4. He also recalled receiving a fax stating that Blazer complained of being refused medications and care at the jail. *Id.* On April 15, 2016, Blazer's lawyer contacted Boll and the Corson County and Walworth County states attorneys informing them that Blazer was still "not receiving some of his prescribed medications which include PTSD meds, diabetic injections and certain pain meds." Docket 66-6. Blazer states that he asked Dale "quite a few" times when Dale transported him to court appearances when Blazer would be receiving his remaining medications. Docket 89-2 at 6. Blazer showed that Tvedt knew about Blazer not receiving medications because Tvedt sent an email to Bogue about Blazer's complaints. Docket 82-10 at 12. Corson County received a faxed copy of Blazer's medical request form stating he was not receiving all of his medications. Docket 66-4. He provided evidence that his attorney contacted the Corson County state's attorney on April 15, 2016 to inquire about the medications. Docket 66-6. These facts raise a genuine issue for trial as to whether the Corson County defendants knew about Blazer's objectively serious medical needs.

Blazer presents evidence to show that the Corson County defendants were indifferent to his medical needs. Despite Corson County's knowledge that he was not receiving his medication, none of the Corson County defendants directed Walworth County to take Blazer to the doctor. Corson County argues that Blazer cannot show that Corson County was refusing to pay for his medication. Docket 99 at 3-4. But refusal to pay for his medication is not the only way Blazer can establish that Corson County was deliberately indifferent.

*See Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (" '[W]here the duty to furnish treatment is unfulfilled, the mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide' " treatment.) (quoting *Crooks v.* Nix, 872 F.2d 800, 804 (8th Cir. 1989))). Corson County contracts with Walworth County to provide housing for pretrial detainees like Blazer. Docket 86 ¶ 2. But Corson County has not alleged facts showing it is responsible for only the costs of those detainees' medical care. Once Corson County became aware of Blazer's medical needs, it took no action and did not direct Walworth County to provide Blazer with medical care. Failing to look into why Blazer's and Franklin's accounts differed despite Blazer's numerous complaints is an inadequate response. Thus, assuming these facts to be true as the court must do on summary judgment, Blazer showed that the Corson County defendants were deliberately indifferent to his serious medical needs.

### C.    Qualified Immunity

Qualified immunity shields government officials from § 1983 suits in their individual capacities if an official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This inquiry requires that a plaintiff show both (1) an official violated his statutory or constitutional right, and (2) the right was "clearly established" at the time of the violation. *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011). If a plaintiff fails to establish either prong of this test, he cannot overcome an official's claim of

qualified immunity. *Id.* Blazer showed that his constitutional rights were violated by the Corson County and Walworth County defendants. The court determines next whether the rights alleged were "clearly established" at the time of the violation.

For a right to be "clearly established," its contours "must be sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This inquiry focuses on "whether the officer had fair notice that [his] conduct was unlawful[.]" *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The clearly established requirement "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6, (2013) (internal quotation omitted).

To determine clear establishment, the court must consider the "specific facts at issue" and refer to authorities "squarely govern[ing]" those facts. *Kelsay v. Ernst*, 933 F.3d 975, 980 (8th Cir. 2019) (en banc) (internal quotation omitted). Courts must " 'not . . . define clearly established law at a high level of generality.' " *Smith v. City of Minneapolis*, 754 F.3d 541, 546 (8th Cir. 2014) (quoting *Ashcroft*, 563 U.S. at 742). " '[P]recedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.' " *Lane v. Nading*, 927 F.3d 1018, 1022 (8th Cir. 2019) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)). The rule cannot be merely "suggested" by existing precedent. *Id.*

### 1.    Corson County Defendants

Blazer asserts that the Corson County defendants were deliberately indifferent to his serious medical needs. *See* Docket 87 at 11. Blazer raised a genuine issue of material fact as to whether the Corson County defendants violated his constitutional rights when they knew of and deliberately disregarded his serious medical needs. Deliberate indifference to a pretrial detainee's rights is a clearly established violation of the detainee's constitutional rights. *See Estelle*, 429 U.S. at 104. But this level of generality is not sufficient to defeat a claim of qualified immunity. Rather, Blazer must show that the *specific* right at issue was clearly established when the Corson County defendants failed to provide him with treatment for his diabetes. To determine clear establishment, the court must consider the "specific facts at issue" and refer to authorities "squarely govern[ing]" those facts. *Kelsay*, 933 F.3d at 980. Thus, the court views the rights violation committed by the Corson County defendants as a contracting county's failure to verify that a detainee is receiving care in a contractor's custody, when the detainee's complaints have reached the contracting county but the contractor has provided surface-level assurance contradicting the detainee's account that the detainee is receiving the necessary care.

Here, Blazer does not point to, and the court cannot identify, any Eighth Circuit or Supreme Court case law establishing Corson County defendants' responsibility to investigate Blazer's complaints after Franklin informed them that Blazer was no longer diabetic. Thus, while the court finds that there is

evidence that Blazer's rights were violated by Corson County's unreasonable failure to investigate Blazer's complaints, the Corson County defendants are entitled to qualified immunity because that right was not clearly established in 2015-2016.

### 2. Walworth County Defendants

The Walworth County defendants acknowledge that they are under a constitutional obligation to provide Blazer with adequate medical care. Docket 77 at 20. The Walworth County defendants assert they did not have adequate notice that their conduct was unlawful. *Id.* They claim that "the only methods of verification available to the jail staff would be to review the MAR and contact the pharmacy to verify that Blazer was receiving all medications that were prescribed and transmitted to the pharmacy." *Id.* at 21. This is not so.

First, Blazer asserts that his request to jail staff was to "provide [him his] medications or *take [him] back to the doctor*." Docket 88 ¶ 6 (emphasis added). Blazer was not taken back to the doctor after his February 17, 2016 visit with Dr. Marciano. Docket 85 ¶ 6. Blazer was taken to the doctor while housed at the Walworth County Jail on three occasions: October 27, 2015, December 31, 2015, and February 17, 2016. *Id.* ¶¶ 3, 4, 6. These visits demonstrate that the Walworth County defendants possessed the capacity to arrange doctor visits for Blazer when he needed medical treatment. Bringing Blazer to the doctor was a reasonable course of action that the Walworth County defendants were able to arrange. Instead, they chose to "ignor[e] [Blazer's] complaints" in contravention of "clearly established" legal principles. *Langford*, 614 F.3d at 462.

Also, the contract between Walworth and Corson Counties empowers Walworth County to take action to treat Corson County detainees' medical issues. The fact that Blazer complained numerous times between the February visit and his transfer to the South Dakota Department of Corrections, yet was not taken to see a doctor, shows that the Walworth County defendants were aware of, but ignored, a course of action that would have addressed Blazer's complaints. Thus, they had adequate notice their conduct violated his Constitutional rights by denying him medical care.

Second, Blazer raised a factual dispute as to whether Walworth County defendants *did* perform any investigation into his complaints. Mickelson does not remember Blazer ever complaining about not getting his medications. Docket 89-11 at 5. She does not remember writing an email that stated Blazer had been taken off the three medications he was not receiving, nor does she remember the circumstances surrounding the email. *Id.* at 7. She believes she would have gleaned this information from a note sent from the doctor's office but does not remember calling the doctor or pharmacy to verify and she did not produce the note. *Id.* at 8. And Hatch, the pharmacist at Family Pharmacy, stated that he never received a call from the Walworth County Jail asking about Blazer's medications. Docket 89-19 at 2. He confirmed that had the jail asked for a refill request for Blazer's missing medications, he would have sent that request to Blazer's doctor. *Id.* at 3-4. Dr. Marciano, who prescribed the medications on February 17, 2016, confirmed that had Blazer or the Walworth County Jail called the clinic to ask if Blazer should have been receiving

29

additional medications, he would have "certainly" looked into his records to determine if more prescriptions should have been transmitted to the pharmacy. Docket 89-1 at 7-9. Thus, Blazer raised an issue of fact as to whether the Walworth County defendants performed any investigation into his complaints, or if they simply told Corson County defendants that he had been taken off his other medications. The right of a detainee to receive medical care for a diabetic condition after the detainee complains about lack of treatment for his diabetic condition was recognized in 1999 by the Eighth Circuit in *Roberson*. 198 F.3d at 648. Thus, Walworth County defendants cannot make a claim of qualified immunity to succeed on a summary judgment motion.

Walworth County defendants argue that calling Dr. Marciano to inquire about Blazer's medications would have been futile because HIPAA would preclude disclosing information about what was prescribed. Docket 77 at 13. But the Walworth County Jail Policies and Procedures requires that "[i]f an inmate requests medical attention," the inmate will be asked to fill out a medical information release form. Docket 78-19 at 9. Thus, Walworth County was empowered to contact Dr. Marciano to verify what medications were prescribed compared to those that were received from Family Pharmacy.

Finally, Walworth County defendants argue that Blazer is attempting to define his rights at a "high level of generality" by simply claiming a right to medical care as a pretrial detainee, and their conduct is better characterized as failure to correct another actor's possible negligence. Docket 96 at 5-6. But Blazer is not alleging that the Walworth County defendants violated his rights

by failing to correct the negligence of Dr. Marciano. Docket 87 at 21. Rather, he asserts that his rights were violated when those defendants failed to provide him access to medical care after repeated complaints that the was not receiving the care he needed. *Id.* A diabetes patient is entitled to access to medication and treatment while being held in custody under clear Eighth Circuit precedent. *See Roberson*, 198 F.3d at 647. And clear precedent establishes that "ignoring [a detainee's] complaints about receiving deficient medical care contravene[s] clearly established" Constitutional principles. *Langford*, 614 F.3d at 462. Thus, Walworth County defendants in their individual capacities are not entitled to summary judgment in their favor because of qualified immunity.

## II. Liability of Defendants in their Official Capacities and County Defendants

A suit against a public employee in his or her official capacity is the legal equivalent of a suit against the governmental entity itself. *Bankhead v. Knickrehm*, 360 F.3d 839, 844 (8th Cir. 2004). In an official-capacity suit against a local government body, a plaintiff must show that a violation of a constitutional right was caused by an official policy or widespread custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). "[N]either municipalities nor government officials may be held liable for unconstitutional conduct under a theory of respondeat superior." *Rogers v. King*, 885 F.3d 1118, 1122-23 (8th Cir. 2018) (citing *Monell*, 436 U.S. at 691). Thus, a governmental entity is liable under § 1983 "only when the entity itself is a 'moving force' behind the violation. That is, the entity's official 'policy or custom' must have

'caused' the constitutional violation . . . ." *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987). "[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

Here, Blazer sues Walworth and Corson Counties, and all defendants, county employees, in their official capacities. Thus, Blazer must present evidence showing that the alleged deprivation of his right to adequate medical care was caused by an official policy or widespread custom of Corson and Walworth Counties.

According to Corson County defendants, Corson County is not responsible for Blazer's day-to-day medical needs and was only responsible for paying bills related to Blazer's medical care.[5] Docket 80 at 14. The agreement

---

[5] The contract between the two counties states that both counties "desire to enter into contract whereby the Contracting County's prisoners and detainees are housed and maintained at the Walworth County Jail pursuant to Chapter 23-11 of the South Dakota Codified Laws." Docket 82-10 at 8. Because SDCL § 23-11 is a repealed law about riots and resistance of process, the court assumes the parties intended to refer to SDCL § 24-11, which governs jails. SDCL § 24-11-23 states that the entity responsible for the operation of a jail "shall adopt written policies and procedures for the regulation of the jail" regarding, among other things, "[t]he employment of medical and surgical aid when necessary." SDCL § 24-11-23. The Walworth County Jail Policies and Procedures manual states that "[t]he proper staff will make necessary arrangements for transportation to the medical facility" when detainees need medical care. Docket 78-19 at 16. The manual does not state who the proper staff are for Walworth County inmates or Corson County inmates housed in Walworth County. The manual does not give instruction for caring for the medical needs of Corson County inmates, and the contract between the counties was purportedly not followed. Thus, the counties appear to be in violation of their contract and SDCL § 24-11-23 by failing to put written procedures in place to address Corson County detainees' care. While violation of a contract or state law is not dispositive of a constitutionally unsound

between Corson and Walworth Counties states that the determination as to whether or not medical care is necessary is left to the "s[o]le discretion of the Walworth County Sheriff's office." Docket 82-10 at 9. But numerous Walworth County defendants testified that, in practice, Corson County was responsible for ordering medications and arranging medical treatment for Corson County detainees held at the Walworth County jail. Bissett testified that when Corson County detainees needed medication, Corson County "would have to be responsible for getting the medications refilled." Docket 89-4 at 3. And if a Corson County detainee had to see the doctor, "it would be on [Corson] [C]ounty to come get them to take them to the doctor and be seen to get their medications refilled . . . ." *Id.* at 3. Strongheart testified that Corson County was responsible for getting Blazer medications, because Blazer was a Corson County detainee. Docket 89-5 at 5. She also testified that she would "leave a note" for Franklin or to contact Corson County if a Corson County inmate requested medical care. *Id.* Ducheneaux testified that he would verbally convey to Franklin when a Corson County detainee made medical complaints and requested additional medication. Docket 89-6 at 7. Boll testified that when a detainee makes a non-urgent medical request, the detainee fills out a medical form that is forwarded to the county where he or she is facing charges. Docket 89-7 at 4-5. But Walworth County did not use a consistent policy to transfer

---

practice, the lack of a written procedure as required by South Dakota state law does support Blazer's assertion that both Corson and Walworth Counties were under a duty to ensure that detainees in Blazer's position received care.

information. Docket 89-7 at 9. Rather, whether inmate complaints were transferred via fax, telephone, or email simply depended on who was sending and receiving the information. *Id.* Mickelson recalled that if a Corson County inmate like Blazer ran out of medication, the Walworth County staff would "advise Corson County and they would handle it from there." Docket 89-11 at 2. Similarly, she testified that if a Corson County detainee wanted to see a doctor, Walworth County staff would notify Corson County, who would either approve or deny the request. *Id.* at 4.

The process was similarly muddy on the Corson County side. Gall, the Corson County sheriff, testified that "normally" Walworth county would call and let him know that a medical "situation" was occurring, and then would sometimes follow up with a fax. Docket 89-15 at 3. Neither party can point to a consistent policy that ensured Corson County detainees being held at the Walworth County Jail would have their medical complaints addressed by either county.

These facts raise a genuine issue of material fact about whether Blazer's alleged injuries were caused by the policy, or a lack thereof, of Walworth and Corson Counties. Each county believed it was the other's responsibility to provide detainees with medical care. As a result, Blazer raised a genuine question of material fact as to whether his complaints were ever taken seriously or investigated by either party. Prison officials are under a constitutional duty to ensure that prisoners receive treatment when needed. *Langford,* 614 F.3d at 460. Two counties were responsible for Blazer's care,

both punting to the other the roll of taking steps to address his complaints. Thus, Blazer raised a genuine issue as to whether Walworth County's and Corson County's policy to ensure pretrial detainees like Blazer would receive medical care is an unconstitutional policy or custom that renders defendants liable in their official capacities under § 1983.

Blazer also showed that Walworth County did not have a policy in place to ensure that medical complaints were addressed and taken seriously. Boll testified that inmates were instructed to fill out a written medical request form. Docket 89-7 at 4-5. But Kroonje stated that inmates' requests were forwarded verbally from a jail staff member to a supervisor. Docket 89-9 at 6. Jungwirth testified that inmate complains were "mostly" transmitted internally via a phone call. Docket 89-8 at 2. When asked how the complaints were "supposed" to be transmitted, he stated that the complaints were typically transmitted either by phone or email. *Id.* This shows a lack of structure in place that did not ensure that medical complaints like Blazer's were being taken seriously. Walworth County is constitutionally obligated to ensure the care of those in its custody when medical needs arise. Thus, its practice of failing to ensure that inmate medical complaints were addressed and looked into is an unlawful custom or practice sufficient to establish county liability.

## CONCLUSION

Blazer raised genuine issues of material fact as to whether he suffered from an objectively serious medical need, the defendants in their individual capacities knew about that need, and they were deliberately indifferent to those

needs. Blazer raised genuine issues of material facts about whether Walworth County defendants violated a clearly established Constitutional right. Blazer did not, however, show that Corson County defendants in their individual capacities violated a clearly established constitutional right, and thus those defendants are entitled to qualified immunity. Blazer raised genuine issues of material fact as to whether a policy or practice of Walworth County and Corson County resulted in his alleged constitutional deprivation to fulfill the requirements under *Monell*. Thus, it is

ORDERED that Walworth County defendants' summary judgment motion (Docket 75) is denied.

IT IS FURTHER ORDERED that Corson County defendants' summary judgment motion (Docket 79) is granted as to Keith Gall, Alan D. Dale, Justin Tvedt and Mike Varilek in their individual capacities. The motion is denied as to Corson County and to Keith Gall, Alan D. Dale, Justin Tvedt, and Mike Varilek in their official capacities.

Dated March 2, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE